NEW YORK SMSA LIMITED PART-
NERSHIP, doing business as Verizon
Wireless, formerly known as Bell At-
lantic Mobile, Plaintiff–Appellant,

v.

The TOWN OF RIVERHEAD, the Town
of Riverhead Town Board, the Town
of Riverhead Planning Department
and the Town of Riverhead Architec-
tural Review Board, Defendants–Ap-
pellees.

Docket No. 00–9523.

United States Court of Appeals,
Second Circuit.

Sept. 3, 2002.

Leon Friedman, Amato & Associates,
P.C., Garden City, NY, for Appellant.

Gair G. Betts, Smith, Finkelstein, Lund-
berg, Isler & Yakaboski, LLP, Riverhead,
NY, for Appellee.

Present F.I. PARKER, POOLER and B.D. PARKER, Circuit Judges.

## SUMMARY ORDER

Appeal from the United States District Court for the Eastern District of New York (Leonard D. Wexler, *Judge* ).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the decision of said district court be and it hereby is AFFIRMED.

Plaintiff-appellant New York SMSA Limited Partnership (doing business as Verizon Wireless and formerly known as Bell Atlantic Mobile) ("Verizon") appeals from the October 25, 2000 Judgment of the United States District Court for the Eastern District of New York (Leonard D. Wexler, *Judge* ), entered pursuant to a Memorandum and Order dated October 24, 2000, which denied Verizon's motion for summary judgment and dismissed the case. Verizon brought this action against Defendants-appellees, the Town of Riverhead, the Town of Riverhead Town Board, the Town of Riverhead Planning Department, and the Town of Riverhead Architectural Review Board ("Town") under the Telecommunications Act of 1996 ("TCA"), as codified at 47 U.S.C. § 332 *et seq.* Verizon alleged that the Town unreasonably delayed and constructively denied Verizon's special permit application to construct, operate, and maintain a personal wireless communication facility within the Town (the "Facility"), thereby violating 47 U.S.C. § 332(c)(7)(B)(ii, iii, & iv). Verizon sought declaratory relief and a mandatory injunction requiring the Town to issue all permits necessary to allow Verizon to construct the Facility.

The TCA sets up a number of standards to govern State and local decisions regarding the placement, construction, and modification of personal wireless service facilities. *See* 47 U.S.C. § 332(c)(7). Among these is a requirement that State and local authorities act on any request for authorization to construct such facilities "within a reasonable period of time after the request" is made. 47 U.S.C. § 332(c)(7)(B)(ii). If a request for authorization is denied, the decision must be "in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). State and local authorities are also specifically prohibited from regulating the construction of personal wireless service facilities "on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [Federal Communications] Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv).

A plaintiff that is "adversely affected by any final action or failure to act by a State or local government" that is inconsistent with these standards may bring suit "within 30 days after such action or failure to act." 47 U.S.C. § 332(c)(7)(B)(v).

Verizon initiated the instant suit in March 2000, one month after the Town issued a Positive Declaration pursuant to the New York State Environmental Quality Review Act ("SEQRA"), 6 N.Y.C.R.R. § 617.7, finding that Verizon's proposed Facility "may have a significant effect on the environment" and requiring Verizon to prepare a Draft Environmental Impact Statement. Joint Appendix at 721. Verizon's Complaint alleged three causes of action. First, Verizon claimed "a failure to act" in that the Positive Declaration violated Verizon's rights under 47 U.S.C. § 332(c)(7)(B)(ii) to obtain action on its application "within a reasonable period of time" after the application was made. Second, Verizon contended that the Town violated 47 U.S.C. § 332(c)(7)(B)(iii) by not supporting the Positive Declaration with

"substantial evidence contained in a written record." Finally, Verizon alleged that the Town contravened 47 U.S.C. § 332(c)(7)(B)(iv) by basing its decision to issue the Positive Declaration on health concerns about radio frequencies that were, according to Verizon, below the emission limits promulgated by the FCC.

The district court determined that the Town had proceeded within a reasonable time frame and dismissed the suit on the grounds that Verizon had no right to judicial review of the Town's decision to issue the Positive Declaration. Specifically, the court held that the Town had neither taken a final action on Verizon's application nor failed to act on it within the meaning of 47 U.S.C. § 332(c)(7)(B)(v). We agree.

■ With regard to its first cause of action, ·Verizon failed to show that the Town unreasonably delayed acting on Verizon's application. Verizon filed its Special Permit Application ("SPA") and an Environmental Assessment Form on March 8, 1999. *See* Appellant's Br. at 11. On March 24, 1999 the Town's environmental planner conducted an initial review and wrote a recommendation. *Id.* at 13. On May 4, 1999 the Town Board designated itself the lead agency under SEQRA with regard to the SPA and forwarded the SPA to the Town Planning Board for its report and recommendation. *Id.* at 15. On July 1, 1999 the Planning Board conducted a public hearing, and Verizon submitted additional documentation, including a health report, a summer visual impact statement, and an engineering report. *Id.* at 15–16. On August 6, 1999 the Planning Board issued a resolution in favor of granting the application and requested that the height of the Facility's antenna be extended. *Id.* at 16–17. On August 17, 1999 the Town Board issued a resolution authorizing the town clerk to advertise a public hearing on September 21, 1999. *Id.* at 17. During the September hearing, Verizon made the same presentation it had made before the Planning Board, and a number of local residents stated their concerns about the proposed Facility. *Id.* at 17–18. The meeting was continued to November 16, 1999 to address these concerns. *Id.* at 18. On November 15, 1999 Verizon submitted supplemental information concerning the height of the Facility's antenna and its visual impact in response to some of the citizen comments made during the September 21 hearing. *Id.* at 19. On November 16, 1999 the public hearing continued, and Verizon submitted a real property appraisal report contending that the Facility would have *no impact* on adjacent real estate use and values. *Id.* at 19–20. The meeting was again continued to allow the submission of written comments, including Verizon's winter visual analysis. *Id.* at 22. On December 8, 1999 a consulting group retained by Verizon prepared an analysis of the proposed Facility applying the SEQRA criteria for determining environmental significance and concluding that the project would have no significant adverse impact on the environment. *Id.* at 22–23. On that same date Verizon conducted a analysis to assess the visibility of the Facility during the winter months when the trees were bare. *Id.* at 23–24. On December 14, 1999, during a work session meeting of the Town Board, Verizon submitted its winter visual analysis as well as a packet of information called "Supplemental Environmental Information" that included the consultant's environmental analysis. *Id.* at 24. The Town Board resolved to keep the record open until December 21, 1999. On that date, the Town Board held its regular meeting, and Verizon provided its last written submission, entitled "Supplemental Information," which included information about other viable sites for the Facility. *Id.* at 25. On February 15, 2000 the Town Board issued the Positive Declaration, concluding the proposed Facility may have a significant

effect on the environment and directing Verizon to prepare an Environmental Impact Statement. *Id.* at 25–26. Verizon filed this suit on March 14, 2000.

Based on this chronology we see no indication that the Town has unreasonably delayed processing Verizon's SPA. After Verizon submitted its SPA, the Town made steady progress in acting on the application. Verizon has produced no evidence that the Town has done anything other than attempt to meet the requirements of New York's environmental law to make an informed decision about the possible environmental impact of Verizon's proposed Facility. We find no suggestion in the record before us that the Town has acted in bad faith in balancing the State directive of SEQRA to assess local environmental concerns and the Federal imperative of the TCA to move with reasonable speed on Verizon's application.

Verizon's second and third causes of action are properly dismissed for the simple reason that the Town has not issued a final (and therefore appealable) decision on Verizon's application. *See Sour Mountain Realty Inc. v. New York State Dep't of Environ. Conservation,* 260 A.D.2d 920, 921, 688 N.Y.S.2d 842, 845 (3d Dep't 1999) (issuance of a positive declaration is an interim decision not ripe for judicial review). The Town's Positive Declaration was a request for more information in order to make a final decision and not, itself, a reviewable "final action" on Verizon's SPA under 47 U.S.C. § 332(c)(7)(B)(v).

For the reasons set forth above and for substantially the same reasons set forth in the district court's October 24, 2000 Memorandum and Order, the judgment of the district court is AFFIRMED.